NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250655-U

NO. 4-25-0655

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 25, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| TYLER W. MORALES, | ) | No. 25CF1273 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Philip J. Nicolosi, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Zenoff and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court reversed, finding the trial court erred when finding no conditions of pretrial release could mitigate any dangers posed by defendant based on the specific articulable facts of the case.

¶ 2    Defendant, Tyler W. Morales, appeals the trial court's order denying his motion for relief from pretrial detention pursuant to the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110 *et seq.*) (West 2024)). On appeal, defendant argues the court erred when finding he committed a detainable offense and no conditions of pretrial release would mitigate any threat he posed. We reverse.

¶ 3                                    I. BACKGROUND

¶ 4    In May 2025, defendant was charged by information with the following offenses, alleged to have occurred as a result of a November 13, 2024, vehicular accident: (1) aggravated driving under the influence of a drug resulting in death (625 ILCS 5/11-501(a)(4) (West 2024));

(2) reckless homicide (720 ILCS 5/9-3(a) (West 2024)); (3) aggravated driving under the influence of drugs or a combination of drugs resulting in great bodily harm (625 ILCS 5/11-501(a)(4) (West 2024)); (4) aggravated use of a communication device resulting in death (*id.* § 12-610.2(b-5)); (5) aggravated use of a communication device resulting in great bodily harm (*id.*); and (6) aggravated reckless driving (*id.* § 11-503(a)(1), (c)). The State filed a petition to deny defendant's pretrial release, which was heard on May 15, 2025.

¶ 5        At the hearing, Detective Brad Kaiser of the Winnebago County Sheriff's Office testified he had downloaded onto a universal serial bus (USB) drive various data, photographs, and videos from defendant's phone, defendant's dash camera, and defendant's girlfriend's phone. The USB drive was admitted into evidence. The first video played for the trial court was from October 29, 2024. Kaiser described defendant's driving in that video as "in excess of the flow of traffic, using turn lanes to overtake other vehicles." The video from defendant's dash camera, recorded at the time of the accident, showed defendant was driving on a road with a posted speed limit of 40 miles per hour. The dash camera recorded until the moment of impact. Kaiser stated, at the time of the accident, defendant was using his cell phone on a FaceTime call with his girlfriend. He said the call lasted approximately "41 seconds." Following the accident, defendant called 911. The court also admitted photographic evidence of injuries to the deceased minor, R.S.

¶ 6        On cross-examination, Kaiser admitted the recording from defendant's dash camera does not show who was driving. He also noted you could not hear defendant speaking or any of his FaceTime conversation because his phone was playing music loudly through a Bluetooth connection.

¶ 7        The State, by way of proffer, alleged suspected cannabis and

tetrahydrocannabinol (THC) gummies were recovered from defendant's vehicle following the accident. When interviewed by the police, defendant denied using his cell phone and stated his "brakes went out." Defendant admitted to smoking cannabis earlier in the day. His vehicle was seized and taken to an automotive repair shop, where the brakes were found to be in "working order." The State informed the trial court R.S. died from a skull fracture and brain laceration.

¶ 8        Defendant proffered this was the first time he had ever been arrested. He stated he turned himself in when he learned about the warrant for his arrest. He also stated he was currently employed. He said he was not using his phone at the time of the accident and any "calls were [made] after the accident."

¶ 9        The trial court noted it had reviewed a factual summary of the accident, which stated defendant was driving 55 to 56 miles per hour on a roadway with a 40 miles-per-hour posted speed limit. According to the summary, defendant failed to stop and struck the rear end of another vehicle, whose passengers included E.S. (born October 2018) and R.S. (born December 2022). As a result of the accident, E.S. "sustained torn ligaments to his neck," and R.S. subsequently died from his injuries. Investigators later learned defendant, while driving, was "actively using 'FaceTime' " at the time of impact. Defendant's blood and urine samples revealed he had "3.8 [nanograms per milliliter] of Delta-9-THC and 41 [nanograms per milliliter] of THC-COOH" in his system. The court stated it had also reviewed the pretrial services report, which showed defendant reported consuming cannabis "once or twice a week." The report indicated defendant's risk factors included he was unemployed at the time of the accident and had a history of drug abuse. Defendant was categorized as a level 2 out of 6 on Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R) by pretrial services. He was 19 years old at the time of the accident, and his criminal history included only one conviction, for speeding, in

2023.

¶ 10    After considering the video and documentary evidence, along with the State's proffer and live testimony, the trial court found the State had proven by clear and convincing evidence the proof was evident and presumption great defendant had committed a detainable offense. The court found defendant posed a real and present danger to the community and cited the statutory factors listed in section 6.1(g) of the Code. See 725 ILCS 5/110-6.1(g) (West 2024). The court noted the circumstances of the alleged offenses; defendant's prior speeding citation, noting he was going 25 miles per hour over the speed limit; the age of the victims; evidence showing defendant "passing other vehicles at what appeared to be a high rate of speed"; and that defendant was only 19, which was under the legal age to consume cannabis. The court recognized defendant's low VPRAI-R score and his minimal criminal history and found defendant did not have a propensity for any violent, abusive, or assaultive behavior.

¶ 11    However, the trial court, citing *People v. Bishop*, 2025 IL App (5th) 241326-U, in support, found there were no conditions of pretrial release that would mitigate the danger defendant posed. The court stated defendant's criminal history included speeding "70 in a 45 at 10:30 at night on a well-traveled roadway" and noted "approximately 13 months later," he was involved in the current matter, again driving at a "high rate of speed at a busy time of day on a busy roadway while FaceTiming." The court stated, "there [was] no indication that he [had] learned from the speeding ticket," despite only scoring a level 2 on the VPRAI-R. The court stated defendant likely minimized his use of cannabis and ultimately showed he was not "following the law." The court considered a secure continuous remote alcohol monitor (SCRAM) device but stated it would not detect cannabis use. The court also considered a curfew, noting defendant's prior speeding incident and that the current matter occurred at night. The

court noted the nature and circumstances of the offense involved multiple victims. The court concluded the State had sufficiently shown no conditions of pretrial release would mitigate the danger defendant posed. The court granted the State's petition to deny defendant pretrial release.

¶ 12    On May 23, 2025, defendant filed a motion to reconsider his pretrial detention. In his motion, defendant argued the State had failed to prove he committed a detainable offense and noted his THC level was below the statutory limit for presumption of impairment. He also noted one of the deputies, who had interacted with him at the time of the accident, had not observed any indications he was under the influence. Defendant denied using FaceTime at the time of the accident. He contended the time stamp on the vehicle's dash camera video and his phone were one hour apart. He claimed he called his girlfriend via Facetime only after the incident. Lastly, he argued there were available conditions of pretrial release the trial court could impose to mitigate any danger he posed. A hearing on defendant's motion was held on June 12, 2025.

¶ 13    At the hearing, defendant offered the testimony of his girlfriend to support his argument he was not using FaceTime at the time of the accident. He also contended the evidence from the original detention hearing showed he was playing music via Bluetooth from his phone through his vehicle. He argued he could not have been playing music and using FaceTime on his phone simultaneously. Defendant also argued *Bishop* was distinguishable because the defendant in *Bishop* was also under the influence of methamphetamine.

¶ 14    The trial court reiterated its findings from the original detention hearing and again relied on *Bishop* as analogous. The court denied defendant's motion.

¶ 15    This appeal followed.

¶ 16                                   II. ANALYSIS

¶ 17    On appeal, defendant argues the trial court errantly concluded (1) he was using

- 5 -

FaceTime at the time of the accident and (2) he was under the influence of cannabis based on his blood test result of 3.8 nanograms per milliliter of THC. He also argues the court (1) failed to properly distinguish the facts of this case from *Bishop* and (2) erred when finding no conditions of pretrial release could mitigate any danger he posed. We address each claim in turn.

¶ 18 Under the Code, it is presumed all criminal defendants are entitled to pretrial release, subject to certain conditions. 725 ILCS 5/110-2(a) (West 2024). The Code requires the State to prove by clear and convincing evidence "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," and "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community." *Id.* § 110-6.1(e)(2), (3)(i). Additionally, section 110-6.1(g) requires the trial court to consider "the specific articulable facts of the case" and provides nine factors the court can also consider when assessing the real and present threat allegation. *Id.* § 110-6.1(g).

¶ 19 When the trial court, presiding over a detention hearing, is presented with live witness testimony, we review the court's decision under the manifest weight of the evidence standard. *People v. Morgan*, 2025 IL 130626, ¶ 54. When the parties proceed solely by proffer at the detention hearing, we review the court's decision *de novo*. *Id.*

¶ 20 Defendant first argues the trial court erred when concluding he was using FaceTime at the time of the accident. He specifically notes Kaiser's testimony showing the time on defendant's phone and his dash camera were not synchronized. He argues it would not have been possible for him to play music through his phone and use FaceTime simultaneously. Lastly, he notes he denied using FaceTime at the time of the accident and his girlfriend also denied communicating with him via FaceTime at the time of the accident.

¶ 21　　　　　We are unpersuaded by defendant's argument regarding whether he was utilizing FaceTime on his phone at the time of the accident. Even if we assume, *arguendo*, he was not using FaceTime at the time of the accident, it would only remove the charged offenses of aggravated use of a communication device; it would not remove any of the other detention-eligible offenses, such as aggravated driving under the influence. Thus, it would not change his pretrial detention outcome.

¶ 22　　　　　Defendant next argues the trial court errantly concluded he was under the influence of cannabis based on his blood test result of 3.8 nanograms per milliliter at the time of the accident. He contends the statutory limit creating a presumption of impairment is five nanograms per milliliter. See 625 ILCS 5/11-501.2(b-5)(1) (West 2024). He also contends the court in *Bishop* found that the defendant was over the legal limit, referring to methamphetamine, which is prohibited in any amount under the Illinois Vehicle Code and the Methamphetamine Control and Community Protection Act. See *id.* § 11-501(a)(6); 720 ILCS 646/5 *et seq.* (West 2024).

¶ 23　　　　　Again, we are unpersuaded by defendant's arguments here. First, the Vehicle Code only creates a statutory presumption for impairment. It does not create an inverse presumption for blood test results under the statutory threshold. Second, the Vehicle Code permits the prosecution of driving under the influence where the use of any drug "renders the person incapable of safely driving." 625 ILCS 5/11-501(a)(4) (West 2024). This was the statute under which defendant was charged. Finally, section 1-5(a) of the Cannabis Regulation and Tax Act (410 ILCS 705/1-5(a) (West 2024)), which legalized recreational cannabis use in Illinois, prohibits the use of cannabis for persons, such as defendant, under the age of 21. We are reviewing whether the trial court erred in determining the evidence showed the proof was evident

and presumption great defendant was driving under the influence, not whether he was guilty of said offense. Based on our review of the evidence presented to the court, we find the evidence was sufficient to show he committed a detainable offense.

¶ 24 Defendant next argues the trial court failed to properly distinguish his case from that of *Bishop*. He contends there were two very significant distinguishing factors: (1) the defendant in *Bishop* failed field sobriety testing and (2) the defendant had methamphetamine in his system. He notes one of the deputies on the scene documented in his report there was no indication defendant was under the influence of drugs or alcohol. He also argues there was no evidence he was under the influence of methamphetamine.

¶ 25 In *Bishop*, the defendant was involved in a single-vehicle accident wherein the passenger was ejected from the vehicle and later died from her injuries. *Bishop*, 2025 IL App (5th) 241326-U, ¶¶ 8-11. Field sobriety testing performed on the defendant showed signs of impairment. *Id.* ¶ 10. Subsequent blood testing revealed the presence of amphetamine and methamphetamine, as well as a THC level of 2.1 nanograms per milliliter. *Id.* ¶ 12. The defendant had "no criminal history and scored a 0 on the Virginia Pretrial Risk Assessment tool." *Id.* ¶ 15. The trial court granted the State's petition to deny the defendant pretrial release. *Id.* ¶ 18. On appeal, the appellate court stated:

"In the present matter, the defendant was charged with aggravating driving under the influence which resulted in a death. The defendant is facing a very serious charge, and if convicted, is facing mandatory time in the Illinois Department of Corrections. The weight of the proffer against the defendant is strong given his admission to the responding officer, which is recorded on the

officer's body-worn camera, that he was driving. If released, the defendant's ability to continue to operate a motor vehicle on public roadways while impaired is a serious and real threat to other persons of the community. The defendant's history and characteristics are also considered; however, they do not overcome the threat to the public." *Id.* ¶ 31.

¶ 26 The court in *Bishop* concluded, without any explanation, there were no conditions of pretrial release that could ensure the safety of the public and affirmed the denial of the defendant's pretrial release. *Id.* ¶ 32.

¶ 27 While we agree with defendant that the instant case and *Bishop* do have some significant distinctions, we do not agree with him that the trial court's failure to properly distinguish them constitutes reversible error. Defendant's arguments here go to a factual issue as to whether he committed the offense of aggravated driving under the influence—a question that will need to be decided at trial. As we noted earlier, we find the evidence was sufficient to show defendant committed a detainable offense for the purposes of pretrial detention, which is a lower standard of proof than that applied during the guilt phase at trial.

¶ 28 Lastly, defendant argues the trial court erred when finding there were no conditions of pretrial release that would reasonably ensure the safety of the community. Defendant notes his criminal history included one speeding ticket from 2023 and there was an approximate six-month gap between when the offenses at issue were alleged to have occurred and when he was charged. He argues the court could have imposed conditions of pretrial release, including random drug testing and electronic home monitoring.

¶ 29 As we stated earlier, all defendants shall be presumed eligible for pretrial release.

720 ILCS 5/110-6.1(e) (West 2024). Relevant to defendant's argument here, the State bears the burden of showing by clear and convincing evidence that "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(e)(3).

¶ 30    The trial court found *Bishop* persuasive when concluding there were no conditions of pretrial release that could mitigate the dangerousness defendant posed. However, the *Bishop* court never gave any reasons for why any conditions of pretrial release would be futile for the defendant in that case. The court here relied on defendant's speeding ticket from 13 months earlier and his illegal use of cannabis to show he likely would not follow the law. However, the court's findings were directly juxtaposed with the fact that six months had passed between the date of the alleged offenses and the detention hearing. The Code contemplates the imposition of conditions of pretrial release to mitigate the dangerousness a defendant poses. Yet, the Code itself only permits pretrial detention for a maximum of 90 days, or three months, excluding any delays occasioned by a defendant, before pretrial release must be granted. *id.* § 110-6.1(i). Based on the specific articulable facts of this case, defendant had already seemingly gone six months without imperiling the community absent the imposition of any conditions of pretrial release.

¶ 31    Accordingly, we find the trial court's determination there were no conditions of pretrial release that could mitigate the danger defendant posed was unsupported by the evidence, and, thus, against the manifest weight of the evidence.

¶ 32                                III. CONCLUSION

¶ 33    For the reasons stated, we reverse the trial court's judgment and remand for a

determination of the appropriate conditions of release, as contemplated by subsection 110-10(b) (*id.* § 11-10(b)).

¶ 34         Reversed and remanded.